No. 25-20486

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

EVAN DOMANIC,

*Plaintiff-Appellant,*

v.

CHRISTIAN BROTHERS AUTOMOTIVE CORPORATION,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division

---

## BRIEF OF APPELLEE

---

Allison B. Allman
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
(817) 334-7200

Jeffrey L. Oldham
Anne B. Irvine
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
joldham@jw.com

*Counsel for Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

No. 25-20486, *Domanic v. Christian Brothers Automotive Corp.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    Defendant-Appellee Christian Brothers Automotive Corporation has no parent corporation or publicly held corporation owning 10% or more of its stock.

2.    Defendant-Appellee is represented in the Fifth Circuit by:

Allison B. Allman
JACKSON WALKER LLP
777 Main Street
Suite 2100
Fort Worth, Texas 76102
(817) 334-7200

Jeffrey L. Oldham
Anne B. Irvine
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000

In the district court, Defendant-Appellee was represented by Scott A. Agthe at Pierson Ferdinand LLP (formerly FisherBroyles, LLP).

i

3.    Plaintiff-Appellant is Evan Domanic.

4.    Plaintiff-Appellant is represented by:

Eric L. Grogan
GROGAN LAW, PLLC
7600 Chevy Chase Dr., Suite 300
Austin, Texas 78752
(512) 966-1847

                                   /s/ *Jeffrey L. Oldham*
                                   Jeffrey L. Oldham
                                   Counsel for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

This case turns on a limited set of undisputed facts and settled law. Oral argument is unnecessary to affirm the straightforward dismissal of Plaintiff Evan Domanic's claims. If the Court decides that oral argument would help in resolving this appeal, however, Defendant Christian Brothers Automative Corporation ("Christian Brothers") requests the opportunity to present its position.

TABLE OF CONTENTS

Certificate of Interested Persons ................................................................i

Statement Regarding Oral Argument .......................................................iii

Table of Authorities..................................................................................vi

Introduction .............................................................................................. 1

Statement of the Issues............................................................................. 4

Statement of the Case .............................................................................. 5

I.    Factual background.......................................................................... 5

      A.    Christian Brothers' faith-based mission integrally relies
            on its policy to issue franchises only to Christians ................ 5

      B.    Christian Brothers denied Domanic a franchise because
            he is not a Christian............................................................... 6

II.   Proceedings below ........................................................................... 9

Standard of Review .................................................................................. 11

Summary of the Argument ...................................................................... 12

Argument.................................................................................................. 15

I.    The district court correctly dismissed Domanic's § 1981 claim
      based on Christan Brothers' religious justification and lack of
      pretext ............................................................................................ 15

      A.    Christian Brothers had a legitimate, religious reason for
            denying Domanic a franchise and he has no evidence
            that Christian Brothers acted pretextually.......................... 15

            1.    It is undisputed that Christian Brothers enforces
                  its faith-based franchisee policy, applied here, both
                  consistently and as a core part of its mission............. 18

2.    It is well-established that Section 1981 does not reach religious discrimination ..................................... 23

B.    Domanic's contrary arguments lack merit ........................... 25

II.    Alternatively, the Court can affirm on other grounds .................. 35

A.    Domanic failed to establish a prima facie case of race discrimination, independently justifying dismissal ............. 36

B.    Regardless, Christian Brothers' race-neutral policy is protected by the First Amendment ...................................... 39

Conclusion ............................................................................................... 42

Certificate of Service ............................................................................. 43

Certificate of Compliance ..................................................................... 44

## TABLE OF AUTHORITIES

**Cases**

*Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs,*
 637 F. Supp. 2d 561 (S.D. Ohio 2009),
 *aff'd*, 399 F. App'x 62 (6th Cir. 2010) ................................................. 28

*Ahmed v. Mid-Columbia Med. Ctr.,*
 673 F. Supp. 2d 1194 (D. Or. 2009) .................................................. 27

*Anderson v. Conboy,*
 156 F.3d 167 (2d Cir. 1998) .............................................................. 24

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ........................................................................... 11

*Aziz v. MMR Grp., Inc.,*
 530 F. Supp. 3d 644 (M.D. La. 2019) ................................................ 28

*Bachman v. St. Monica's Congregation,*
 902 F.2d 1259 (7th Cir. 1990) ........................................................... 16

*Badgerow v. REJ Props., Inc.,*
 974 F.3d 610 (5th Cir. 2020) ...................................................... 11, 17

*Bailey v. Metro Ambulance Servs., Inc.,*
 2019 WL 13289498 (N.D. Ga. 2019) ................................................. 29

*Boggs v. Home Depot,*
 2023 WL 1779690 (S.D.N.Y. 2023) .............................................. 30, 31

*Boy Scouts of Am. v. Dale,*
 530 U.S. 640 (2000) ........................................................................... 40

*Burwell v. Hobby Lobby Stores, Inc.,*
 573 U.S. 682 (2014) ........................................................................... 41

*Byers v. Dall. Morning News, Inc.,*
 209 F.3d 419 (5th Cir. 2000) ............................................................. 18

*Chauhan v. MM Hotel Mgmt. LLC*,
2019 WL 6118006 (E.D.N.Y. 2019)................................................29

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020)........................................................... 36, 37

*Furman v. DaimlerChrysler Corp.*,
2007 WL 4562317, (S.D. Ohio 2007) ........................................ 29, 30

*Gold Coast Commodities, Inc. v. Travelers Cas. &*
*Sur. Co. of Am.*,
96 F.4th 769 (5th Cir. 2024) ...................................................11

*Hager v. Brinker Tex., Inc.*,
102 F.4th 692 (5th Cir. 2024) ............................................. 12, 36

*Hill v. City of New York*,
136 F. Supp. 3d 304 (E.D.N.Y. 2015).........................................36

*Hosanna-Tabor Evangelical Lutheran Church & Sch.*
*v. E.E.O.C.*,
565 U.S. 171 (2012)...............................................................40

*Kirshner v. First Data Corp.*,
2000 WL 1772759 (N.D. Tex. 2000).........................................31

*Kosher Ski Tours Inc v. Okemo LLC*,
2021 WL 5326527 (S.D.N.Y. 2021)..........................................30

*Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.*,
772 F.3d 443 (7th Cir. 2014).................................................28

*Markel v. Union of Orthodox Jewish Congregations of Am.*,
124 F.4th 796 (9th Cir. 2024),
*cert. denied*, 145 S. Ct. 2822 (2025) ........................................41

*McCoy v. Homestead Studio Suites Hotels*,
177 F. App'x 442 (5th Cir. 2006) (per curiam) ...........................24

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...............................................................11

*McRaney v. N. Am. Mission Bd. of the*
  *S. Baptist Convention, Inc.*,
  157 F.4th 627 (5th Cir. 2025) ........................................................ 40

*Owens v. Circassia Pharms., Inc.*,
  33 F.4th 814 (5th Cir. 2022) ................................................ 12, 17, 25

*Patel v. Midland Mem'l Hosp. & Med. Ctr.*,
  298 F.3d 333 (5th Cir. 2002) ....................................................... 23

*Pavon v. Swift Transp. Co., Inc.*,
  192 F.3d 902 (9th Cir. 1999) ....................................................... 24

*Proa v. NRT Mid Atl., Inc.*,
  618 F. Supp. 2d 447 (D. Md. 2009),
  *aff'd*, 398 F. App'x 882 (4th Cir. 2010) ....................................... 37

*Runyon v. McCrary*,
  427 U.S. 160 (1976) ........................................................ 15, 16, 24, 26

*Sagana v. Tenorio*,
  384 F.3d 731 (9th Cir. 2004) ....................................................... 24

*Saint Francis Coll. v. Al-Khazraji*,
  481 U.S. 604 (1987) ............................................................. 16, 24, 26

*Savage v. Temple Univ. of Commonwealth Sys. of*
  *Higher Educ.*,
  2022 WL 911153 (E.D. Pa. 2022) ................................................ 29

*Shaare Tefila Congregation v. Cobb*,
  481 U.S. 615 (1987) .................................................................... 16

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*,
  363 F.3d 299 (4th Cir. 2004) ....................................................... 41

*Shore v. Mirabilio*,
  2019 WL 13293059 (D. Conn. 2019) ........................................... 31

*Sibley v. Touro LCMC Health*,
  2024 WL 5118489 (5th Cir. 2024) ............................................... 23

viii

*Singer v. Denver Sch. Dist. No. 1,*
   959 F. Supp. 1325 (D. Colo. 1997) ....................................................... 31

*United States v. Nelson,*
   277 F.3d 164 (2d Cir. 2002) ............................................................. 31

*Watkins v. Tregre,*
   997 F.3d 275 (5th Cir. 2021) ............................................................ 12

**Statutes**

42 U.S.C. § 1981 ........................................................................ *passim*

42 U.S.C. § 2000e, et seq. ................................................................. 27

**Rule**

Fed. R. Civ. P. 56(a) ...................................................................... 11

## INTRODUCTION

Christian Brothers is a faith-based Christian company, openly and as its core driver. Its line of work is franchising auto-repair stores, and its franchised stores offer auto-repair services to any customer of any religious viewpoint. But its most fundamental aim is to "love your neighbor as yourself" from "Matthew 22:39," and its mission statement is "to glorify God by providing ethical and excellent automotive repair service for our customers." Domanic mocks the idea of "rotating tires and replacing brake pads" being "ministry," yet that fatally misunderstands Christian Brothers as a company—*and* the faith on which it is centered. A key part of its mission is to spread the message of Christianity to its guests and others. And it rightly boasts that what sets it apart is the chance for Christ followers to live out their faith at work, where "[i]t's not God over there and job over here. God is in everything." Christian Brothers has been public, transparent, and consistent about all of this for over four decades, including throughout its website.

This case therefore implicates the heart of Christian Brothers' identity, culture, and mission. Its right to choose its franchisees, and specifically to enforce its policy of issuing franchises *only* to professing

1

Christians, is foundational.  As shown by unrebutted summary-judgment evidence, Christian Brothers has consistently applied this policy—never granting a franchise to a non-Christian in its over-40-year history—and the policy is critical for many reasons: Franchise owners are front-line ambassadors charged with carrying out the company's mission, and living out the Christian faith, with guests and others.  Having fellow Christian believers in that role is imperative to fulfilling these goals at each store, to preserving Christian Brothers' identity and distinctive brand, and to maintaining its unique and loyalty-engendering culture, especially with current franchisees.  Ensuring that franchisees espouse a Christ-following faith is, in short, essential.  And as explained below, using such a *religious* prerequisite in private contracting is well-established as legal under the federal statute at issue.

In this case, Domanic sought to be a Christian Brothers franchisee but was denied in the early stages because he identified his religious "faith" as "Jewish," *i.e.*, he is not a religious Christian.  Yet Domanic then filed a race-discrimination claim under 42 U.S.C. § 1981, which was the first time his Jewish *ethnicity* was made known to Christian Brothers. Under § 1981, "all persons . . . shall have the same right . . . to make and

2

enforce contracts . . . as is enjoyed by white citizens . . . ." As written and interpreted, § 1981 prohibits racial (and ethnic) discrimination but does not at all reach contract-related actions on *religious* grounds. *See infra* Argument, Part I.A.2. Christian Brothers' franchisee policy is perfectly lawful under § 1981 despite Domanic's subjective, lay belief that it "[s]ounds like discrimination." And his assertion of *racial* discrimination finds no support in the facts—which uniformly show that Christian Brothers denied his bid for a franchise *because his stated religion was not Christianity*, not based on his (then-unknown) race.

Given how clearly the law and facts support dismissal in this case, Domanic rests his appeal on the untenable position that Jewish faith is inseparable from Jewish ethnicity. In Domanic's telling, *any* private-contracting decision based on a person of Jewish *faith* not being Christian—which § 1981 permits—should be made unlawful whenever the person is also ethnically Jewish, on the theory that ethnicity and faith cannot be distinguished for Jewish people. Domanic unsurprisingly cites no law actually so holding. His conflation of religious faith and racial ethnicity is also belied by the undisputed evidence of *existing* Christian Brothers franchisees *who are ethnically Jewish yet Christian by faith*; by

3

his own father, who is Jewish by faith but not race; and by cases applying § 1981 that readily distinguish between religion and ethnicity, including for Jewish people. Domanic's claim that continuing this settled distinction would lead to a dangerous loophole (or absurd results) of widespread racial discrimination against ethnic Jews is utterly unfounded. *Domanic's* proposed new legal rule, in contrast, would create the truly absurd results of trampling religious rights and creating race-discrimination claims where race itself is undisputedly not a factor.

The district court correctly saw this case for what it is: a disguised claim for religious, not racial, discrimination. And the court properly dismissed the § 1981 claim on that basis. A contrary holding would rewrite § 1981 and prevent Christian Brothers from preserving its core identity and maintaining its faith-based mission. The Court should affirm dismissal of Domanic's § 1981 claim.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly granted summary judgment on Domanic's § 1981 claim for racial discrimination, where Christian Brothers denied Domanic a franchise on permissible religious—not racial—grounds and there is no evidence of pretext?

2.    Alternatively, whether the district court's judgment should be affirmed on other grounds, including that Domanic failed to make even a prima facie case of racial discrimination and that the First Amendment shields Christian Brothers from his § 1981 claim.

STATEMENT OF THE CASE

## I.    Factual background.

Christian Brothers is a faith-based franchisor of auto-repair stores, with a stated mission to "glorify God by providing ethical and excellent . . . service" to its customers.  ROA.421.  To further that Christian mission, it offers franchises only to professing Christians. ROA.425.  Domanic, who is undisputedly a religious Jew, was denied a franchise because he did not satisfy this "key characteristic" of a Christian Brothers franchisee: Christian faith.  ROA.423, 432, 434.

### A.    Christian Brothers' faith-based mission integrally relies on its policy to issue franchises only to Christians.

Christian Brothers stores open their doors to every customer, but, in order to further the mission of sharing Christ and living out Christian teachings through each store's business and community, the company requires that each of its franchise owners share a Christian faith. ROA.425-28; *see also infra* Argument, Part I.A.1 (describing more about

5

company's background, mission, and policy). The centrality of Christian Brothers' faith-based mission, and the essential role that each franchisee's faith plays in that mission, is publicly available through the company's website, branding, mission statement, and even its name. ROA.442-56, 421-23; *see also infra* Argument, Part I.A.1.

Of the more than 250 franchise owners who Christian Brothers has partnered with, all are professing Christians. ROA.425. In Christian Brothers' more than forty years of conducting business (since 1982), it has never offered a franchise to an applicant who was not spiritually aligned with the company and prepared to share a personal Christian testimony. ROA.423, 425, 428. Importantly, while all franchisees espouse a common religious faith, Christian Brothers franchisees are composed of many different races and ethnicities—including some of Jewish ethnicity who practice a Christian faith. ROA.425-26, 428-29.

## B. Christian Brothers denied Domanic a franchise because he is not a Christian.

Domanic applied to open his own Christian Brothers franchise in the fall of 2020, allegedly because he was impressed with the service he received at a Christian Brothers store. ROA.69. In the course of the process that followed, a Christian Brothers employee, Brandon Thomas,

6

asked Domanic about his "faith," and Domanic responded he is "Jewish"—not a Christian. ROA.69; *see also* ROA.530, 537-38, 632, 736. Domanic claims Thomas told him religion would not be an issue, while Christian Brothers denies such a statement was ever made (which would contradict forty-plus years of Christian Brothers' policy and consistent practice), ROA.69, 195, 406, 633—though that dispute does not matter in the end, *see infra* p. 23 n.6.

Ultimately, after three of eight steps in the interview process for a Christian Brothers franchise, Thomas called Domanic in November 2020 and told him the process was coming to an end.[1]   ROA.400, 433. According to Domanic, Thomas told him the process was ending because he is "Jewish." *E.g.*, ROA.70, 537-38. Domanic now *alleges* this referred to his Jewish *ethnicity*, ROA.71, but his Jewish ethnicity (as opposed to his Jewish faith) was undisputedly never shared or discussed with Christian Brothers until this lawsuit was filed, ROA.432-34.

The subsequent, unrebutted evidence by Christian Brothers shows that Domanic's bid was rejected because his non-Christian (Jewish) faith

---

[1] Step three is "the first time the candidate is sharing more personal information." ROA.436.

disqualified him from a Christian Brothers franchise under its longstanding policy to franchise with only Christian believers.[2] *E.g.*, ROA.432-35. Christian Brothers has ended the franchise-prospect process at the same stage, with other non-Christians of various races, for the same "lack of spiritual alignment." ROA.432.

The summary-judgment record also includes an affidavit by Christian Brothers' Chief Growth Officer Brad Fink, who is "responsible for approving or rejecting prospects for franchise ownership." ROA.424; *see* ROA.420-39. Fink directed Thomas, who is responsible only for gathering information, to end Domanic's application after Thomas "brought the issue to me and sought guidance on how to respectfully discontinue the process since [Domanic's] Jewish religious beliefs were not aligned with the core Christian religious beliefs and faith-based mission of Christian Brothers." ROA.424, 428-29, 433-34, 436. It is undisputed that Domanic's ethnicity was unknown to Christian Brothers

---

[2] Domanic's own deposition testimony also reflects an understanding that religion, not race, resulted in the end of his franchise process. *See* ROA.535-37 (testifying that he "think[s] it's wrong" for Christian Brothers "[t]o make only Christians . . . franchisee owner[s]," thinks it "[s]ounds like discrimination" for Christian Brothers to use religion as a basis for who it chooses to associate with, and agrees he does not have a personal relationship with Jesus Christ as his Savior).

at the time, such that it played no part in the decision to end his franchise-bid process—a decision that was made "solely based on religion." ROA.432-34.

Christian Brothers' faith-based mission, visible through its name, branding, and marketing materials, means that it generally attracts the interests of professing Christians for franchises. ROA.432. Even so, very few applicants who start the process make it to the final step: Domanic was one of more than 1,200 applicants in 2020, only twenty-four of whom were awarded a franchise. ROA.434-35, 437-38. Again, Christian Brothers has never offered a franchise to a non-Christian applicant, but its Christ-following franchisees represent many races and ethnicities, including some of Jewish ethnicity. ROA.423, 425-26, 428-29.

## II.    Proceedings below.

Domanic filed a claim for race discrimination under § 1981 in 2022. ROA.16-21; *see* ROA.68-75 (live complaint). Christian Brothers moved to dismiss the claim, arguing, *inter alia*, that Domanic's allegations related solely to his Jewish faith, not his ethnicity. ROA.27-42. The district court (Judge Lynn Hughes) denied that motion, finding that Domanic

adequately pleaded a plausible § 1981 claim. ROA.128-31; *see also* ROA.131 (dismissing Domanic's abandoned DTPA claim).

Christian Brothers later moved for summary judgment on the § 1981 claim. ROA.395-542 (motion and exhibits). It argued that Domanic's claim is "a religious discrimination claim masquerading as race discrimination"; that Domanic failed to make out a prima facie case of racial discrimination; that Christian Brothers' franchisee policy is a lawful, race-neutral reason; that Domanic failed to prove pretext, but-for causation, or intentional racial discrimination; and that the First Amendment bars the claim. ROA.395-416.

The district court (Judge Drew Tipton) granted Christian Brothers' summary-judgment motion, dismissing Domanic's claim. ROA.880-96. In the court's view, Domanic had pleaded a prima facie case under § 1981, but Christian Brothers readily demonstrated a legitimate, race-neutral justification for the allegedly discriminatory conduct—that Domanic was denied a franchise on permissible religious grounds, not invalid racial ones—and there was no credible evidence of this reason being pretextual. ROA.888-95. The court rejected Domanic's contention that his Jewish religion is indistinguishable from his Jewish ethnicity for discrimination

10

purposes. ROA.891-92. The court explained that Christian Brothers had ample evidence that its policy of issuing franchises only to Christians is longstanding and has been consistently applied, including to award some franchises to Christians *of Jewish ancestry*, and that Domanic had nothing to create a fact issue on this policy being used as a proxy for race or a façade to exclude him based on his ethnicity. ROA.891-95.

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed de novo. *Gold Coast Commodities, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 96 F.4th 769, 771 (5th Cir. 2024). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 616 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Because Domanic undisputedly had no *direct* evidence of racial discrimination, the district court applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ROA.887-

11

95; *see also Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022).  Under that framework, Domanic first had to establish a prima facie case of race discrimination.  *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 699 (5th Cir. 2024).  The burden would then shift to Christian Brothers to articulate a legitimate, non-discriminatory reason for its conduct.  *Id.*  The burden would then shift back to Domanic to produce sufficient evidence that Christian Brothers' stated reason is pretextual such that there is a genuine fact dispute allowing a reasonable juror to find racial discrimination.  *Id.* at 699, 704; *see Owens*, 33 F.4th at 825-26 (citing *Watkins v. Tregre*, 997 F.3d 275, 281-83 (5th Cir. 2021)).

## SUMMARY OF THE ARGUMENT

Domanic's § 1981 claim for racial discrimination was properly dismissed on summary judgment because there is no real dispute that his franchise bid was terminated on non-racial, permissible religious grounds.  Even assuming Domanic presented a prima facie case of racial discrimination (which Christian Brothers disputes), the district court correctly found there are no fact issues over Christian Brothers' stated reason for its action; the legitimate, non-discriminatory nature of that justification; and the conclusion that this reason was not a pretext for

12

racial discrimination. In short, Christian Brothers ended Domanic's franchise bid because he is not a Christian—he's admittedly religiously Jewish—*not* because he is an ethnic Jew, a fact that Christian Brothers undisputedly never knew until Domanic later filed this suit. Christian Brothers applied its longstanding policy of granting franchises *only* to professing Christian believers, with unrebutted summary-judgment evidence proving that Christian Brothers has consistently enforced this policy for decades. And the law is crystal-clear that § 1981 *permits* such religious-based prerequisites in private contracting.

Under the burden-shifting framework applied below, Christian Brothers amply met its burden (assuming a prima facie case was made) of a legitimate, non-discriminatory reason it denied Domanic a franchise: he is not a Christian, and Christian Brothers issues franchises only to Christians. Domanic then bore the burden to rebut Christian Brothers' religious reason for ending his franchise bid by showing it was a pretext. He wholly failed to do so. As the district court explained, for both of these steps, the evidence overwhelmingly supports Christian Brothers' *religious* justification for not extending Domanic a franchise—a race-neutral ground that is not covered by or cognizable under § 1981. For

13

example, Domanic has no answer to the undisputed facts that Christian Brothers has *never* relaxed its faith-based policy since its founding, and that Christian Brothers has awarded franchises to ethnically Jewish people (like Domanic) who are religiously Christian (unlike Domanic). Not only did Domanic fail to offer any credible evidence showing pretext, but the summary-judgment evidence proved the exact opposite.

On appeal, Domanic ignores all of this and tries to escape the law and his burden with a single argument he makes repeatedly: that there is "no meaningful distinction" between his Jewish religion (which was disclosed to Christian Brothers) and his Jewish ethnicity (which was not), such that courts cannot distinguish between religion and race under § 1981 (only for Jewish people, apparently). This conflation of religion and race is not supported, and indeed is squarely contradicted, by precedential legal authorities and the facts in this case. There is an obvious legal and common-sense difference between religion and race. Domanic's contrary claim would make § 1981—which says nothing about religion and has been consistently held not to reach it—a de facto ban on considering religion in private contracting, at least for Jewish people. It would also create § 1981 claims where race itself is *undisputedly* not a

14

factor.   The Court should reject Domanic's argument, and as he "concedes" (at 10), that would "foreclose" his § 1981 claim.

The Court should thus affirm based on the district court's correct holdings that Christian Brothers conclusively proved a legitimate, non-discriminatory reason for denying Domanic a franchise and that he failed to create a fact issue on pretext.  Alternatively, the Court can affirm on other grounds, including Domanic's failure to present a prima facie case of discrimination and the safe harbor that Christian Brothers' policy finds under the First Amendment.

## ARGUMENT

**I.    The district court correctly dismissed Domanic's § 1981 claim based on Christan Brothers' religious justification and lack of pretext.**

**A.    Christian Brothers had a legitimate, religious reason for denying Domanic a franchise and he has no evidence that Christian Brothers acted pretextually.**

Under § 1981, "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981.   Courts have construed § 1981 to forbid all "racial" discrimination in the making and enforcement of contracts.  *Runyon v. McCrary*, 427 U.S. 160, 168, 174-75 (1976).  It is settled that ethnic or

15

racial Jews are protected under § 1981.[3] *E.g.*, *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 612 (1987); *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987). But only purposeful discrimination on the basis of *race* can support a claim under § 1981, which does not cover religion. *E.g.*, *Runyon,* 427 U.S. at 167 (§ 1981 does not prohibit discrimination on gender or religion); *see also infra* Parts I.A.2–I.B.

Here, the evidence conclusively demonstrates that Domanic was denied a Christian Brothers' franchise solely because he identified himself as not a Christian believer. Brad Fink is the Christian Brothers' executive principally charged with reviewing franchise applications, and he ultimately was personally involved in ending the franchise discussions with Domanic. *See* ROA.420, 423-25, 429-36. In a lengthy affidavit, Fink detailed the origins, purpose, historical application, and consistent enforcement of the company's long-standing practice of considering only franchisees who share the Christian faith. ROA.421-29. He also

---

[3] Domanic devotes much of his brief to this undisputed point that *ethnic* Jews are protected from *racial* discrimination under § 1981 because they were considered a distinct group when the statute was passed. *See also Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1260-61 (7th Cir. 1990). The question here is not whether Domanic, as an *ethnic* Jew, is a member of a protected class under § 1981, but whether Domanic was discriminated against *because* of that.

explained how and why this policy was applied in this case. ROA.433-36. Christian Brothers does not inquire about a prospect's race or ethnicity at any point in the franchise-bid process, and was unaware of Domanic's Jewish heritage when his process was ended over his stated "Jewish" "faith." ROA.69, 428-29, 432-34, 537-38, 632, 736.

The district court held *both* that Christian Brothers' religious justification was amply proved and is a legitimate, non-discriminatory reason for denying Domanic a franchise, *and* that no credible evidence showed Christian Brothers' stated reason was pretextual. ROA.890-95. Domanic's attack on the legitimacy and non-discriminatory nature of Christian Brothers' religious justification appears to turn *entirely* on the notion that religion and ethnicity (at least for Jewish people) cannot be separated *as a matter of law*, which is meritless for the reasons below. *See infra* Part I.B. On pretext, Domanic had the burden to produce evidence sufficient to create a genuine issue of material fact that his franchise bid was denied because of his Jewish ethnicity, *not* his Jewish faith as Christian Brothers states. *Owens*, 33 F.4th at 825-26; *Badgerow*, 974 F.3d at 616. Domanic failed to do so and instead offered only his subjective belief that he was rejected because of his (never-disclosed)

17

ethnicity, which is not enough to survive summary judgment. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir. 2000).

In short, on both steps of the analysis, the district court correctly concluded there was no credible evidence to dispute Christian Brothers' well-supported and legally valid justification for the challenged conduct: that Domanic was denied a franchise on religious, not racial, grounds. ROA.890-95. The district court properly granted summary judgment.

### 1. It is undisputed that Christian Brothers enforces its faith-based franchisee policy, applied here, both consistently and as a core part of its mission.

Since its founding, Christian Brothers has imposed one non-negotiable requirement: it grants franchises only to professing Christians. *See, e.g.*, ROA.425 (describing "Christian Brothers' practice of only offering franchise agreements to persons who unequivocally profess to be Christians of like faith and who, from the best judgment of the executive team, exhibit a genuine spiritual relationship with Jesus Christ.").[4] Christian Brothers has had over 250 franchisees across more

---

[4] Mark Carr founded Christian Brothers with a member of his Sunday school class at Spring Branch Bible Church, where they were "encouraged by their Sunday school class to call it Christian Brothers Automotive, as they were two brothers in Christ." ROA.422.

than four decades. ROA.425. And that has included a racially diverse array of franchisees, including at least two who volunteered to Christian Brothers that they were of Jewish ethnicity or heritage. ROA.425-26, 428-29. But Christian Brothers has *never* relaxed its faith-based franchisee policy; without exception, every Christian Brothers franchise owner is a professed Christ believer. *E.g.*, ROA.425.

First, as a company, Christian Brothers' core identity, mission, and resulting culture is about its Christ-based approach and the association with Christian believers. While the core *business* of its franchised stores is to provide auto-repair services (to anyone), that doesn't tell even half the story. The company's name reflects its faith-based Christian grounding. ROA.421. Its website prominently lists its guiding principle to "Love Your Neighbor As Yourself" from "Matthew 22:39." ROA.422, 443; *see also* 421-23, 442-44, 455, 461. Its official mission statement is "to glorify God by providing ethical and excellent automotive repair service for our customers." ROA.421, 480. The record is full of public, transparent examples of this faith-based character that drives Christian Brothers. *See, e.g.*, ROA.441-46, 448-61, 466-69, 473.

19

Part of this Christ-based approach means, as the website says, "applying strong Biblical principles to the auto repair industry." ROA.448 (cleaned up); *see* ROA.422. But another critical, overt part of Christian Brothers' mission is for its stores to spread the message of Christianity and Jesus Christ to its guests, employees, and community members when the opportunity presents itself. ROA.426-28. Another part is to foster a culture where people seek "to live out their spiritual lives at work," such that, as one testimonial said, "[i]t's not God over there and job over here. God is in everything." ROA.426-27, 448. Each of these faith-based drivers are central to Christian Brothers' existence and continued operation since its founding in 1982.[5]

Second, mission-critical to all of this is Christian Brothers' ability to choose its own franchisees, specifically to include only professed Christ

---

[5] Given these core parts of Christian Brothers' mission, which themselves reflect common Christian beliefs, Domanic is wrong to make light of the notion that "rotating tires and replacing brake pads" can be "ministry." Br.16. He likewise misunderstands the nature of Christ-centered beliefs (and the law) in claiming that, as to "the concept that Americans have the right to freely exercise their religion by choosing to associate with fellow believers to carry out a religion mission," this is limited to when "in a congregation or church setting." ROA.535. Such attempts to minimize what Christian Brothers stands for as a company— *and* the faith on which it is based—are seriously misplaced.

believers. For one, people who are not spiritually aligned with Christian Brothers' religious values cannot carry out Christian Brothers' faith-based mission in their communities. *E.g.*, ROA.426 ("Christian faith is necessary to carry out the mission of sharing the Christian faith and living out the Christian faith in how the Company and its stores do business and interact with people. That cannot be done by someone who does not know Jesus Christ on a personal basis and who is not committed to following Christ in their daily life."); *see also* ROA.426-28. That certainly applies to the core missions of spreading the Christian faith and being in a culture with fellow Christian believers. And beyond that, as a franchisee's testimonial put it: "We are followers of Christ, and we honor him by providing great service . . . . We are committed to service, not just to accomplish our business goals, but also because we feel like we're answering to our savior in everything that we do." ROA.423, 451-52.

Christian Brothers' policy of issuing franchises only to Christian believers is, in this way, a necessity for Christian Brothers' identity, culture, and mission. *See, e.g.*, ROA.425-28. It is vital to allowing the company and franchisees to carry out their missions, to preserving the company's unique identity and distinct brand, and to maintaining the

21

company's loyalty-engendering culture, especially for current franchisees and the Christ-based camaraderie they have.  ROA.421-23, 426-28.

In sum, Christian Brothers' consistent application of its faith-based franchisee policy provides ample—and undisputed—evidence of *both* its legitimate, non-discriminatory reason for denying Domanic a franchise, *and* the fact that applying the policy here was no pretext for racial discrimination.  The summary-judgment evidence was also unrebutted that race and ethnicity specifically play *no* role in Christian Brothers' prospect-review process.  ROA.425-26 ("Race is not a consideration in connection with franchisee qualification."); ROA.432 ("[T]he race or ethnicity of the prospects is not and never has been part of the criteria and would not be discussed when considering prospects because it is not part of the criteria to be a qualified franchisee.").  That is powerfully reinforced by the uncontroverted fact that a variety of races and ethnicities make up Christian Brothers' franchisees, including some of whom are Jewish by ethnicity but Christian by faith.  ROA.429.

Against all of this, as the district court explained, Domanic has *no* evidence to rebut Christian Brothers' legitimate, non-racial justification

22

or to establish pretext.[6] ROA.890-95. The record here strongly supports dismissal under current law, *see infra* Part I.A.2, and Domanic's attempts to rewrite the law are misguided, *see infra* Part I.B.

### 2. It is well-established that Section 1981 does not reach religious discrimination.

Domanic does not directly dispute the point, but it bears emphasis that § 1981 is settled to reach only racial discrimination—and specifically *not* religious discrimination, which is not cognizable under the statute. *See, e.g., Sibley v. Touro LCMC Health*, 2024 WL 5118489, at *4 (5th Cir.

---

[6] The district court correctly disregarded the single, stray, disputed remark allegedly by Thomas, a non-decisionmaker, as insufficient to create a fact issue, ROA.893-94, and Domanic has waived any contrary argument by failing to raise it on appeal (or even below when opposing summary judgment, *see* ROA.600-16). Domanic's complaint alleged that Thomas, an employee gathering information about franchise applicants, told him religion would not be an issue and that Christian Brothers "had hired other people of numerous faiths," which is apparently why Domanic speculated Christian Brothers' denial was based on his Jewish ethnicity. ROA.69, 71, 73. Christian Brothers has denied any such statement was made, but regardless, Christian Brothers conclusively refuted the substance through unrebutted evidence of its consistent policy to issue franchises only to Christians. ROA.194-95, 425, 433-37, 633. Further, even if made, the statement does not support Domanic's speculation, which is refuted by the undisputed fact that Domanic's ethnicity was not disclosed to or known by Christian Brothers until this suit. ROA.432-34. And the district court also correctly found this stray remark failed to create a fact issue because Thomas is not a decisionmaker for Christian Brothers. ROA.893-94; *see* ROA.428, 436-37; *see also Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002).

2024) ("§ 1981 'does not protect against religious discrimination.'") (quoting *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 445 n.2 (5th Cir. 2006) (per curiam) (citing *Runyon*, 427 U.S. at 167)); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age.") (internal citations omitted); *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) ("To establish a claim under § 1981 the plaintiff must prove that he or she was subjected to intentional discrimination based upon his or her race, rather than solely on the basis of . . . their religion."); *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004) (Section 1981 "does not protect against discrimination on the basis of . . . religion").

Even the cases Domanic relies on reject the notion that making contractual decisions on religious grounds can support a § 1981 claim. *See* Br.7, 14, 17-18 (citing, *e.g.*, *Saint Francis Coll.*, 481 U.S. at 613 ("If [Plaintiff] can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, *rather than solely on* the

24

place or nation of his origin, or *his religion*, he will have made out a case under § 1981.") (emphasis added)).[7]

This established legal principle, applied to the unrebutted evidence in this summary-judgment record (*see supra* Part I.A.1), decides the case. It dictates the legitimacy and non-discriminatory nature of Christian Brothers' justification for denying Domanic a franchise, and underscores the absence of pretext (of which there is *no* evidence, much less evidence creating a fact issue). *Owens*, 33 F.4th at 825-26. The district court correctly dismissed Domanic's § 1981 claim on this basis.

**B.    Domanic's contrary arguments lack merit.**

Domanic also goes nowhere with his appellate attempt to avoid the district court's straightforward basis for dismissal. Domanic mainly tries to enlarge the race-based bounds of § 1981 by repeatedly urging a novel and unsupported theory: that Jewish religion cannot be separated from Jewish ethnicity because there is no meaningful distinction. *See, e.g.,*

---

[7] Critically, as explained below, Domanic's legal position that religion and race/ethnicity are the same would silently yet necessarily overrule this precedent. *See infra* Part I.B. It would result in § 1981 barring religious prerequisites in private contracting (at least for Jewish people), contrary to longstanding law and the statute's plain text that says nothing about religion.

Br.2, 4-5, 9-15, 17-19. He appears to "concede[]" his claim is "foreclose[d]" if he is wrong about this. Br.10. Instead of citing evidence of pretext or otherwise showing that he was denied a franchise on racial grounds, Domanic asks this Court to adopt a new legal rule equating Jewish faith and ethnicity for § 1981, such that all private-contracting decisions based on *religion* will now constitute de facto *racial* discrimination (at least for all ethnic Jews). This position is flawed for multiple reasons.

<u>*First*</u>, Domanic's contention cannot be squared with § 1981's text or controlling precedent. Section 1981 expressly covers contracting rights *only* vis-à-vis "as is enjoyed by white citizens," 42 U.S.C. § 1981—*i.e.*, race. It says *nothing* of religion. No doubt, its *race*-based protection has been construed to cover the races and ethnic groups recognized at the time § 1981 was adopted. *See Saint Francis Coll.*, 481 U.S. at 612. But the Supreme Court and other courts have consistently distinguished that from "religion." *E.g.*, *Runyon*, 427 U.S. at 167. This is not merely loose language in the cases; fundamentally, race and religion are distinct. And the law could not be more settled that § 1981 does not apply to claims of religious discrimination. Domanic's claim of no meaningful distinction

26

between religion and ethnicity therefore contravenes controlling law. *See also supra* Part I.A.2.

Domanic's religion-equals-ethnicity argument also conflicts with other areas of the law in which "race" and "religion" are wholly distinct classifications, even if each is protected. *See, e.g.*, 42 U.S.C. § 2000e, *et seq.* (prohibiting employment discrimination based on race, color, religion, sex, and national origin). Indeed, accepting Domanic's view—that, for a person who is both ethnically and religious Jewish, any religion-based decisions are also automatically race-based—would transform the First Amendment by turning all free-exercise and free-speech claims into race-based claims as well. Domanic focuses on § 1981, but offers no rationale for limiting his sweeping proposed legal rule about the purportedly inseparable link between religion and ethnicity.

*Second*, Domanic's conflation of Jewish faith and ethnicity has been repeatedly rejected by courts in the specific context of § 1981 claims. *See, e.g.*, *Ahmed v. Mid-Columbia Med. Ctr.*, 673 F. Supp. 2d 1194, 1204 (D. Or. 2009) (While "religion and race can be closely linked," § 1981 was intended to protect people from discrimination based solely on "ancestry or ethnic characteristics," and thus "evidence of a religious animus

27

cannot, without more, give rise to an inference of racial animus to support a § 1981 claim") (quotations omitted); *Aziz v. MMR Grp., Inc.*, 530 F. Supp. 3d 644, 654 & n.11 (M.D. La. 2019) (refusing to consider "attempts to plead claims for religious discrimination under § 1981" despite plaintiff's claim they were "intertwined" with race-based discrimination claims); *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) ("There is a distinction between being discriminated against on the basis of practicing a religion and being discriminated on the basis of being part of a racial group associated with a religion; the former is insufficient to support a § 1981 claim, while the latter may be actionable."); *Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.*, 772 F.3d 443, 446-47 (7th Cir. 2014) (rejecting Jewish center's § 1981 claim after being disaffiliated by university over excessive underage drinking, as an ethnic motivation for the decision "would hardly be plausible, considering how many Jews there are in the university's student body, faculty, and administration,"

and § 1981 "does not protect against discrimination based on sex or *religion* or age.") (quotations omitted) (Posner, J.).[8]

Another case, *Furman v. DaimlerChrysler Corp.*, concerned a single § 1981 claim for discrimination based on race, ethnicity, and religion. 2007 WL 4562317, at \*2 (S.D. Ohio 2007). The plaintiff, a religious and ethnic Jew, asserted claims based on the conduct of the defendant business's buyer, a Christian who spoke to the plaintiff frequently about religion. *Id.* at \*1-2.

The court distinguished between evidence relating to racial discrimination and religious discrimination. *Compare id.* at \*5 ("The bulk of [plaintiff's] evidentiary allegations—the "The Passion of the Christ" references, the Torah interpretation disagreement, the comments about raising children under Judaism, and other comments . . . arguably

---

[8] *See also, e.g., Savage v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 2022 WL 911153, at \*7 (E.D. Pa. 2022) ("intersectional discrimination claims are cognizable under Title VII," but "are not cognizable under § 1981"); *Bailey v. Metro Ambulance Servs., Inc.*, 2019 WL 13289498, at \*14 (N.D. Ga. 2019), *aff'd*, 992 F.3d 1265 (11th Cir. 2021) (asserting discrimination on basis of a religion that is part of ethnic characteristics or ancestry does not "transform said discrimination [in]to race-based discrimination within the meaning of Section 1981"); *Chauhan v. MM Hotel Mgmt. LLC*, 2019 WL 6118006, at \*1, 11 (E.D.N.Y. 2019) (rejecting notion that "Asian and Indian" plaintiff's Hindu religion was part of his "race and ethnicity under § 1981").

speak to *religious* discrimination, not *racial* discrimination."), *with id.* at *4-5 (finding fact issue regarding racial discrimination based on statement that defendant business was "not going to do business with you and your family," where there was no evidence the employee knew "anything about the religious practices" of plaintiff's relatives).  In doing so, the court implicitly rejected the notion that Jewish faith and ethnicity are indistinguishable.  *See id.* at *5 (while the "distinction between racial versus religious discrimination is often slight and nuanced," "the Court must credit the distinction").

*Third*, Domanic is wrong about even the "scant" number of cases he claims "tacitly" endorse his view that race and religion are inseparable (for Jewish people).  *See* Br.10-15.  *Kosher Ski Tours Inc v. Okemo LLC* held merely that Jews are a protected racial class under § 1981—which is undisputed here—and that a corporation can have standing to pursue § 1981 claims—which is not at issue here.  2021 WL 5326527, at *6 (S.D.N.Y. 2021).  Domanic represents *Boggs v. Home Depot* as featuring claims by Hasidic Jewish plaintiffs, but in fact the § 1981 claims were brought by "black" plaintiffs for conduct allegedly prioritizing requests of Hasidic Jews "of Caucasian descent" over their own; the *race* of the

Hasidic Jews, not their religion, was found relevant to their claims. 2023 WL 1779690, at *3-4 (S.D.N.Y. 2023). In *Singer v. Denver School District No. 1*, meanwhile, the court did not discuss the relationship between race and religion in holding merely that a claim of race-discrimination against a Jew, "a distinct racial group," could proceed. 959 F. Supp. 1325, 1330-31 (D. Colo. 1997).

Similarly unhelpful to Domanic is *United States v. Nelson*, which simply states, in dicta, that § 1981 extends "to protect the Jewish 'race'"—which is undisputed here. 277 F.3d 164, 177-78 (2d Cir. 2002). And its discussion of religion *hurts* Domanic because, far from equating race and religion, it found the Thirteenth Amendment covers the distinct category of religion as an *alternative. Id.* at 179-80. Further, *Shore v. Mirabilio* dealt with a different statute (Title VI) under a different standard (plausibility). 2019 WL 13293059, at *7-8 (D. Conn. 2019) (motion to dismiss). And it does not deny any distinction between race and religion but simply recognizes that Jews are a protected racial category. *Id.* Finally, the footnote in *Kirshner v. First Data Corp.* is pure dicta (as Domanic admits), it is wrong (as demonstrated throughout this brief), and it is not binding in any way. 2000 WL 1772759, at *1 n.4 (N.D. Tex.

31

2000). In sum, Domanic's cited cases do not vindicate his claim that race and religion are inseparable, and none hold any sway over this Court.

*Fourth*, the record in this case also squarely refutes Domanic's misguided theory that Jewish faith and ethnicity cannot be separated. Closest to home, evidence about Domanic's own father disproves his point because his father has *no* Jewish ethnicity or ancestry, but is religiously Jewish after his conversion as an adult. ROA.391-93. Similarly, as noted above, Christian Brothers' own franchisees prove that religion can (and must) be meaningfully distinguished from ethnicity: at least two of its current franchisees are Christians by faith, though Jewish by ethnicity. ROA.429. This evidence underscores the law, and common sense, that religion and race are not inseparable but instead distinct. The notion that a *religion*-based contracting decision necessarily constitutes *race*-based discrimination, because the person affected happens to be ethnically Jewish in addition to religiously Jewish, is unfounded.

*Fifth*, Domanic faults the district court for not engaging in a "historical analysis" of § 1981. Br.17-18. But he never engages in any of his own as relevant to his proposed rule that Jewish faith and ethnicity are indistinguishable. Instead, his brief focuses on the (undisputed) fact

32

that Jews were recognized as a distinct racial group when § 1981 was enacted. *E.g.*, Br.9-10, 17-18. He offers no historical support for his view that the Jewish race and religion are inseparable under § 1981. And as explained above, the cases applying § 1981 expressly limit its application to the only protected category covered by the statutory text—race, not religion. *See supra* Part I.A.2. It is certainly not enough (as Domanic does) to throw out a novel, legally unsupported, and counter-factual theory and say it should be *assumed* as true. *See* Br.18.

*Sixth*, Domanic is wrong to claim, as a supposed "loophole" or "absurd result" from the decision below, that respecting the race-religion distinction will mean "widespread, invidious discrimination" against Jews. Br.ii, 2, 17-19. Suffice it to say that Domanic has not discovered, one-hundred-and-fifty years post-enactment, any such "loophole" or "absurd result" in § 1981, not to mention other laws distinguishing between religion and race. Keeping this settled distinction in § 1981 does not sanction companies to hide race-based discrimination under religious pretexts, as § 1981 firmly prohibits *racial* discrimination against ethnically Jewish people and current § 1981 law allows plaintiffs to show pretext to ferret out veiled discrimination—which, here, Domanic could

not even create a fact issue about. Nor is there any reason to credit Domanic's unsubstantiated claim of a coming avalanche of racial discrimination against Jewish people. His threats are empty—pure rhetoric.

In fact, it is *Domanic's* proposed rule conflating race and religion that would create intolerable, absurd results. Under his view, § 1981 precedent that the statute does not cover religion would be overruled— at least vis-à-vis Jewish people—because parties in Domanic's position would automatically have a *race*-based claim whenever a party like Christian Brothers considers *religion* in contracting decisions. *See supra* pp. 23-27. Such a broad expansion of this federal statute would override important religious rights of private parties across the nation. Faith-based entities will face an effective de facto ban on considering religion in private contracting, putting at risk their ability to affiliate with only those who share their faith or faith-based mission. Indeed, that appears to be precisely what Domanic seeks. *See, e.g.*, ROA.535.

Strangely, too, Domanic's rule would achieve this harmful outcome by sanctioning *race*-based claims in cases where (as here) it is undisputed that race per se—as opposed to religion—played no role whatsoever. And

if anything, it is Domanic's position that creates a "loophole" by creating an exception only for people who are both ethnically and religious Jewish, without any legal basis for it.  The Court should reject Domanic's core position, as the district court did.  ROA.891-92.

*    *    *

For these reasons, the district court correctly dismissed Domanic's § 1981 claim, under the second and third prongs of the burden-shifting framework applied below, because there is no genuine dispute that his franchise bid was denied on religious rather than racial grounds.

## II.    Alternatively, the Court can affirm on other grounds.

The Court could alternatively affirm the district court's judgment on other grounds presented below.  First, in multiple ways, Domanic failed to meet even his threshold burden of making a prima facie case of race discrimination.  *See* ROA.401-12.  Second, the First Amendment protects Christian Brothers' race-neutral, religious policy.  *See* ROA.403, 412-15.  The district court denied the first set of arguments but did not consider the second ground.  ROA.888-90, 895 n.5.

**A.    Domanic failed to establish a prima facie case of race discrimination, independently justifying dismissal.**

Under the burden-shifting framework applied below, Domanic bore the initial burden of establishing a prima facie case of race discrimination by producing evidence that: (1) he is a member of a racial minority; (2) Christian Brothers intended to discriminate based on race; and (3) the discrimination concerned an activity enumerated in § 1981.  *See supra* pp. 11-12; *see also Hager*, 102 F.4th at 700.  On the second part, however, at least four separate deficiencies in Domanic's claim independently preclude him from making even a prima facie case of racial discrimination.  Each deficiency justifies affirmance here.

*First*, Domanic failed to establish that his race—which Christian Brothers undisputedly was not aware of—played *any* role in ending his franchise-bid process, much less satisfying the higher but-for standard that § 1981 demands.  *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also* ROA.401-05.  Courts have rejected similar § 1981 claims when the claims are instead premised on non-racial categories.  *See, e.g.*, *Hill v. City of New York*, 136 F. Supp. 3d 304, 329 n.6 (E.D.N.Y. 2015), *order amended and supplemented*, 2019 WL 1900503 (E.D.N.Y. 2019) (rejecting as implausible § 1981 claim based

36

on non-racial categories); *Proa v. NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 461, 468-69 (D. Md. 2009) (dismissing Jewish plaintiff's § 1981 claim for failing to establish prima facie case of racial discrimination where he "would have to show that any discrimination against him was motivated by his ethnicity and not solely by his religious beliefs, status, or practices"), *aff'd*, 398 F. App'x 882 (4th Cir. 2010).

Here, Domanic has no evidence that his *ethnicity* was the but-for cause of Christian Brothers' franchise decision. *See, e.g.*, ROA.401-05. Christian Brothers relied on its longstanding, consistently applied, faith-based policy, and would have made the same decision regardless of Domanic's Jewish ethnicity—about which Christian Brothers did not know when making its decision. ROA.432-34; *see Comcast Corp.*, 589 U.S. at 333. This conclusion is especially true where Christian Brothers has never offered a franchise to a non-Christian, and has franchisees *of Jewish heritage* (who are Christians). ROA.423, 425, 428-429. Domanic's claims fail on the but-for causation requirement alone.

<u>Second</u>, Domanic certainly cannot meet the requirement of proving *intentional* discrimination based on race. *See* ROA.405-06. It is

undisputed that Christian Brothers did not even know Domanic's ethnicity until this suit was filed. ROA.428-29.

*Third*, Domanic also provided no evidence of a similarly-situated applicant who was treated differently. *See* ROA.408. To the contrary, Christian Brothers has *never* made an exception to its franchisee policy, such that every applicant who, like Domanic, is not spiritually aligned with the company has not been given a franchise. *E.g.*, ROA.27-80, 432. Further, Christian Brothers identified current franchisees who were in the same protected category as Domanic (ethnic Jews) and were given a franchise agreement *because* they were Christian believers. ROA.429. Domanic has no evidence otherwise on similarly-situated comparators.

*Fourth*, Domanic's contractual interest in a Christian Brothers franchise was too speculative and undefined to support a § 1981 claim. *See* ROA.408-12. Domanic was one of 1,289 applicants in 2020, only twenty-four of whom were awarded a franchise. ROA.437-38. His bid was terminated in the early discovery phase—after step three of eight, long before his materials would have been provided to an executive-leadership team for official review or he would have received critical materials about any franchise offering. ROA.400-01, 433-37. The details

38

of any potential franchise, like a territory analysis or calculation of funding, were never discussed with him. ROA.435. And he was unqualified on multiple grounds that made any contractual interest speculative, indeed illusory: In addition to his lack of spiritual alignment, there were no available franchises in Domanic's geographic area to offer him, and, at a bare minimum, he lacked the required characteristic of professional leadership experience. ROA.435. Domanic therefore had *no* contractual interest at all, but at the least, his interest in a Christian Brothers franchise was speculative. Even if he were spiritually aligned, he had no evidence that there was an available contract or that he would have secured it. ROA.435.

In each of these respects, Domanic failed to make out a prima facie case of racial discrimination, independently warranting dismissal.

**B.    Regardless, Christian Brothers' race-neutral policy is protected by the First Amendment.**

Independent of § 1981's legal framework, Christian Brothers' right to pursue its faith-centric mission by enforcing its race-neutral policy of offering franchises only to practicing Christians is protected by the First Amendment. This separately supports affirming the judgment below.

Two First Amendment principles are relevant here: freedom of association and the ministerial exception. "The right to freedom of association is a right enjoyed by religious and secular groups alike." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 189 (2012). "Forcing a group to accept certain members may impair the ability of the group to express those views, and only those views, that it intends to express," therefore the freedom of association includes a freedom *not* to associate. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

Meanwhile, the ministerial exception acts as an affirmative defense to otherwise cognizable discrimination claims. *Hosanna-Tabor*, 565 U.S. at 195 n.4. The doctrine arises out of the "First Amendment's protection of a religious organization's right to decide 'who will personify its beliefs.'" *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627, 652 (5th Cir. 2025) (quoting *Hosanna-Tabor*, 565 U.S. at 188).

The ministerial exception "extends just as strongly to ministries structured through voluntary associations and at-will partnerships" as it does to hierarchical church structures. *Id.* "The act of profiting . . . does not inherently make an organization non-religious" for purposes of the

40

exception. *Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 803 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). And "[n]umerous courts" have held that the term "religious institution" can include religiously affiliated entities, including corporations, in this context. *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 310 (4th Cir. 2004). Indeed, the Supreme Court has recognized that for-profit corporations may "further religious objectives." *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 712 (2014).

Here, either First Amendment principle—especially the ministerial exception—protects Christian Brothers from Domanic's § 1981 claim. Christian Brothers' franchisee policy is plainly about associating with fellow Christ followers, irrespective of race. *See supra* pp. 1-3, 5-9, 16-23. In selecting franchisees, Christian Brothers decides who will personify its beliefs to its customers in carrying out its mission to "glorify God by providing ethical and excellent . . . service" to its customers. ROA.421. Further, Christian Brothers' core mission goes beyond auto repairs to practice what is a religious ministry, for the company and its franchisees, in each franchised location. *See, e.g., supra* Part I.A.1. It is a faith-based mission, publicly and transparently, including having franchisees spread

41

the news of Christianity and Jesus Christ to guests and others. *See, e.g.,* *id.* That even includes, within their communities, being spiritual leaders, praying together, leading Bible studies, and sharing the Gospel and faith testimonials. *E.g.,* ROA.421-23, 425-28, 431, 448, 451-52, 455-56, 469. On these facts, at least the ministerial exception should apply. The First Amendment further precludes Domanic's § 1981 claim.

## CONCLUSION

For these reasons, the Court should affirm.

Respectfully submitted,

/s/ *Jeffrey L. Oldham*

| | |
|---|---|
| Allison B. Allman | Jeffrey L. Oldham |
| aallman@jw.com | joldham@jw.com |
| JACKSON WALKER LLP | Anne B. Irvine |
| 777 Main Street, Suite 2100 | airvine@jw.com |
| Fort Worth, Texas 76102 | JACKSON WALKER LLP |
| (817) 334-7200 | 100 Congress, Suite 1100 |
| | Austin, Texas 78701 |
| | (512) 236-2000 |

*Counsel for Defendant-Appellee*

42

## CERTIFICATE OF SERVICE

I certify that this brief was filed with this Court via the Court's CM/ECF system on March 9, 2026 and that an electronic copy of it was served on counsel of record, as listed below, via the Court's CM/ECF system on the same date:

Eric Grogan
eric@groganfirm.com
GROGAN LAW, PLLC
7600 Chevy Chase Dr.
Suite 300
Austin, Texas 78752
(512) 966-1847

*Counsel for Plaintiff-Appellant*

/s/ *Jeffrey L. Oldham*
Jeffrey L. Oldham

43

**CERTIFICATE OF COMPLIANCE**

I certify that:

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(A)(7)(B) because it consists of 8,395 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32.2.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft 365 Century Schoolbook in 14-point font.

/s/ *Jeffrey L. Oldham*
Jeffrey L. Oldham